## PEOPLE v. WILMARTH.

(Supreme Court, Appellate Division, Third Department.    May 4, 1898.)

1. JUROR—ACTUAL BIAS.
    Under Code Cr. Proc. § 376, subd. 2, providing that the existence of such
    a state of mind on the part of a juror as satisfies the court that he cannot
    try the issue without prejudice to the challenging party's substantial rights
    shall be ground for a challenge, where a juror, on his voir dire, states that
    he has a decided opinion as to defendant's guilt or innocence which it would
    take evidence to overcome, and that he does not think he would be un-
    prejudiced, a challenge for actual bias should be sustained.

2. EVIDENCE—BOOKS.
    A city treasurer was indicted for altering a pay roll, and thereby wrongly
    obtaining money from the city.    It was the legal duty of the street super-
    intendent to prepare a pay roll of each person employed, and the time he
    labored, his wages, and the amount due him.    The superintendent also kept
    a time book, where he entered such data.    ·Held, that such book was inad-
    missible in evidence generally, no evidence being given that it was made in
    performance of his duties, or that it was correct.

3. WITNESS—USE OF MEMORANDUM.
    Time books kept by a superintendent, showing the number of men em-
    ployed and the time each labored, may be used by him to refresh his recol-
    lection.

Appeal from Fulton county court.

Frank H. Wilmarth was convicted of grand larceny in the second
degree, and of forgery in the third degree, and appeals.    Reversed.

The defendant was brought up upon an indictment charging him with the
crime of grand larceny in the second degree and of forgery in the third degree.
During the impaneling of the jury, one Hollenbeck being called as a juror, upon
his examination as to his qualifications therefor, after having given his under-
standing as to the duties of a juror and as to the necessity of his giving the
defendant the benefit of every reasonable doubt in the case (it appears that
he had read something about the case), testified as follows:    "What I read in
regard to this matter purported to be the testimony taken before the commit-
ting magistrate.    Q. And in reading of that did you form an opinion in regard
to the guilt or innocence of. Mr. Wilmarth?    A. I did.    Q. Was that a decided
and fixed opinion?    A. Quite so.    Q. And would it require evidence to remove
this?    A. It would.    Q. And considerable, too?    A. Considerable.    Q. You
think that you are as unbiased and unprejudiced to sit in this case now as
you would have been if you hadn't read that in the paper?    A. I do not.    Q.
Do you feel that you are yourself as competent to go in there and try this
case as if you had not read and formed an opinion?    A. No, I don't think I
would be; not quite.    I don't think I would be a fair and unprejudiced man to
try the case against Mr. Wilmarth, the way I feel now.    Q. You understand
that any impression you might have now in your mind, it would be your duty
to lay it aside when you enter the jury box?    A. Yes, sir;    I understand that.
Q. And would be willing, if you went into that jury box, to just listen to
the evidence, and determine it according to the evidence?    A. Yes, sir.    Q.
And there is no doubt in your mind but what you could do it?    A. No doubt,
as far as I know of now.    Q. You have now a decided opinion as to the guilt
or innocence of the defendant?    A. Yes; quite so.    Q. Unless there is some-
thing adduced to contradict or combat that opinion, it would remain with you
and prejudice you, if sworn as a juror?    A. It would.    Q. And unless there
was testimony here to contradict and combat that opinion, you would take it
with you into the jury room when you retired to consider of your verdict?    A.
No;    I don't think I would.    Q. How would you rid yourself of it?    A. Well,
I don't know as I could rid myself of it entirely: but, as I say, after I heard
the evidence I might think differently.    Q. Suppose there was nothing in the
testimony to make you think differently; would not your opinion then interfere

in the consideration of your verdict? A. Yes, sir; it would. Q. And you have a decided prejudice for or against the defendant because of the opinion which you have? A. Yes, sir; I think that is it." The defendant's counsel thereupon insisted upon their challenge to the proposed juror for actual bias. Against the objection and exception of the defendant, the district attorney then examined the witness further, as follows: "Q. In spite of any prejudice or any opinion you might have, you would go into the box and decide the case upon the evidence that was given here, and under the law as laid down by the court, would you not? A. I would." On further examination by defendant's counsel, he said: "Q. Do you mean to say that after listening to testimony for two or three days here in this action, after having the decided opinion and prejudice which you now have for or against the defendant, you could retire to consider of your verdict, and remember alone the testimony here adduced, and not be interfered with in any wise by the testimony which you have read or by the opinion which you have formed? A. No; I don't think I could. I think what I read would have some effect upon me." The defendant's counsel thereupon insisted upon the challenge. The court overruled it, the defendant excepting, and the witness took a seat in the jury box. The defendant did not challenge the juror peremptorily, and he was one of the jury of 12 men who tried the case and rendered the verdict. Before the jury were sworn the defendant had exhausted his peremptory challenges. The jury found the defendant guilty, and from the judgment of conviction the defendant appeals to this court. Numerous other questions are raised upon this appeal besides those relating to the qualifications of the juror Hollenbeck to serve, and the facts in relation to some of them, so far as necessary, are referred to in the opinion.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Robert P. Anibal, for appellant.

William C. Mills, Dist. Atty. (H. V. Borst, of counsel), for the People.

HERRICK, J.    Every person accused of crime has a right to insist that the jury by whom he is to be tried shall be composed of unprejudiced, fair, and impartial men. While the trial court has facilities superior to those of the appellate court for determining whether the persons selected as jurors are unprejudiced, fair, and impartial, the appearance and demeanor of a juror while under examination being great aids in forming a judgment as to his honesty, sincerity, and intelligence, and while in an otherwise doubtful case we should abide by the determination of the trial court as to the qualifications of a juror, yet when it appears clear to us from the record that a prejudiced man—one who is incapacitated from passing fairly upon the case—has been allowed to serve as a juror, then it is our duty to disregard the decision of the trial court, and give to the defendant the benefit of our convictions in the matter; otherwise the right and duty to review devolved upon this court would be valueless. In this case it seems to me perfectly clear that the juror Hollenbeck was not an unprejudiced juror, although he seems to have been an honest and candid man. Without reviewing his examination, it is sufficient to say that he had a then present opinion as to the guilt or innocence of the defendant that it would take evidence to overcome; that he was prejudiced. He himself testified that he did not think he would be a fair and unprejudiced man to try the case. The juror was not brought within the meaning and spirit of the requirements of subdivision 2, § 376, Code Cr. Proc., as to persons who have formed an

opinion as to the guilt or innocence of an accused. It is unnecessary to refer to precedents in passing upon this question. Each case turns upon its own peculiar facts; the general rule is well known. In this case it is perfectly apparent that, as to this juror at least, the defendant had imposed upon him the burden of proving his innocence of the crime charged against him, instead of having the burden imposed upon the people of proving his guilt. The defendant's challenge to the juror should have been sustained.

The defendant also brings up the exceptions taken by him to the reception in evidence of certain pages of a time book kept by the superintendent of streets of the city of Gloversville. The charge against the defendant is that he altered a pay roll of city laborers from $31 to $131, he being treasurer of the city, and thereby obtaining $100, which he was charged with keeping. It is the duty of the street superintendent of the city of Gloversville to make out and present to the common council pay rolls stating under oath the name of each person employed, the time he labored, his wages per day, and the amount due him. Section 9, tit. 3, c. 55, Laws 1890. It appears in evidence that the superintendent was in the habit of keeping what he called a time book, wherein he entered the names of the persons employed by him, the time when employed, and their wages per day. The prosecution offered two pages of this book in evidence, apparently the pages covered the same period of time as did the pay roll in question. The defendant objected to their reception in evidence as incompetent, irrelevant, and immaterial, and that no proper foundation had been laid for their reception in evidence. There was no evidence that the time book was made by the witness in the performance of his duties, and there was no evidence that it was made at the time the men were employed; neither did he testify as to its correctness. The prosecution upon this appeal stated that "on the trial it was treated as a memorandum of the witness, containing a large number of names, items of wages, and hours of labor, which the witness could not recollect without the book, and it was intended by its introduction not to be evidence in itself, but merely a statement of entries and items, which the witness identified." And, again, that "this memorandum was not offered as showing any conclusions or as evidence of any facts stated therein." No such position in reference to this time book appears to have been taken upon the trial by the people, but the same was offered and received generally in evidence, and, so far as I can see, without any limitation or restriction, and not as a mere memorandum, from and by which the witness refreshed his recollection. The book, the proper foundation being laid therefor, could undoubtedly be used to refresh the recollection of the witness, as now contended for by the people, but its reception at the time and in the manner the record discloses, over the defendant's objection, was error. For these reasons the judgment should be reversed, and a new trial granted. All concur.